IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WARREN G. LOW, M.D. and <br> THOMAS K. TKACH, M.D., <br><br> Plaintiffs, <br><br> v. <br><br> OMNI LIFE SCIENCE, INC. and <br> GEORGE CIPOLLETTI, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) No. 21 C 1568 <br> ) <br> ) Magistrate Judge Finnegan <br> ) <br> ) Underlying Litigation: <br> ) United States District Court for the <br> ) Western District of Oklahoma, <br> ) Case No. 5:18-CV-305-SLP |

## ORDER

Non-Party Andrew McLeod filed this matter seeking to quash a Rule 45 deposition subpoena issued to him by Plaintiffs Warren G. Low, M.D., and Thomas K. Tkach, M.D., in a case they filed against Defendants Omni Life Science, Inc. ("OMNI") and George Cipolletti in the Western District of Oklahoma. The district judge referred the motion to this Court to conduct necessary proceedings and enter an Order or Report and Recommendation as appropriate. (Doc. 7). On April 7, 2021, this Court granted the unopposed motion, noting that "Plaintiffs [had] communicated to non-party McLeod by email that 'No one will be appearing on behalf of Plaintiffs in the Northern District of Illinois.'" (Doc. 11).

McLeod has now filed an opposed motion for sanctions, arguing that in issuing the subpoena, Plaintiffs failed to take reasonable steps to avoid imposing an undue burden on him. (Doc. 13). As a sanction, he seeks payment of $24,522.40 in attorney's fees that he says were incurred in this matter, plus additional fees to be determined (likely in a

similar amount) for drafting and filing the motion for sanctions. For reasons stated here, the motion for sanctions is denied.

## BACKGROUND

Plaintiffs filed the underlying Oklahoma lawsuit on April 5, 2018, alleging that Defendants breached a product development and surgical consulting services agreement executed by Plaintiffs and OMNI in 2006 and 2007. That case (No. 5:18-CV-305-SLP) remains pending in the Western District of Oklahoma, with Allen M. Gardner of Latham & Watkins LLP (among others) representing Defendants.

### A. The Subpoena to McLeod

In January 2019, McLeod joined Corin Group, an international orthopedic company, as President of Corin USA, and in March 2019, Corin Group acquired OMNI. Though this acquisition took place nearly a year after Plaintiffs filed their lawsuit, Defendant OMNI introduced McLeod's name into the case on August 19, 2020 when it served Second Supplemental Responses to Plaintiffs' First Set of Interrogatories and Requests for Production ("Supplemental Discovery Responses"). (No. 18-cv-305-SLP, Doc. 102-9). In response to Interrogatory No. 2, seeking the identity of all persons "who purport to have knowledge or relevant information concerning the facts or circumstances of this case," OMNI provided a list of individuals that ended with "Andy McLeod." (*Id.* at 4).[1] In response to Interrogatory No. 23, OMNI identified Andy McLeod and provided his

---

[1] Interrogatory 2 also said the "answer should include all persons who heard or claim to have heard any statements made by any party or witness concerning any aspect of the claims, defenses, or incidents alleged and all persons with knowledge of any kind concerning any claims, defenses, or incidents alleged." (No. 18-CV-305-SLP, Doc. 102-9, at 20-21). Plaintiffs attached a partial (undated) version of the discovery responses to their Objections to the sanctions motion. (Doc. 21-1).

email address with Coring Group as one used "to communicate with Plaintiffs." (*Id.* at 21).[2]

On December 8, 2020, Plaintiffs asked Defendants to provide dates for the deposition of McLeod. (Doc. 2-1, at 32). Defendants responded less than two hours later, questioning what relevant information McLeod, a high-level Corin executive, could possess. (*Id.* at 32-33). On December 15, 2020, Plaintiffs explained that McLeod had conversations "with the doctors [Plaintiffs Low and Tkach] about this [litigation]," and the following day pointed out that OMNI had identified McLeod's email as one used to communicate with Plaintiffs. (*Id.*). Defendants remained unconvinced that McLeod was a proper deponent, and over the following weeks the parties exchanged correspondence and engaged in meet and confer conferences in an effort to resolve the dispute. (*Id.* at 32-33, 36-38; Doc. 24-1, at 2). These efforts proved unsuccessful and on March 2, 2021, Plaintiffs issued a notice to take McLeod's deposition (on March 23, 2021 by Zoom Video Communication or similar videoconferencing platform). The notice stated that the subpoena (which was attached) would be served on McLeod. (Doc. 2-1, at 47). Several days later on March 11, 2021, Plaintiffs served that deposition subpoena, seeking to depose McLeod via Zoom on March 23, 2021. (*Id.* at 49). It does not appear that the parties had further any discussions on the issue until March 22, 2021 when Plaintiffs

---

[2] More specifically, Interrogatory No. 23 requested OMNI to "Identify any and all email accounts used by you for communications relating to royalties paid to medical service providers." Subject to a number of objections, OMNI provided certain emails and then noted: "In March 2019, Corin Group acquired Omni. Following that time, communications relating to Plaintiffs using the following email address" but none was provided. The answer then concluded: "Specific email addresses used to communicate with Plaintiffs are" and provided the email address for Andy McLeod at Coring Group. (Doc. 21-1, at 3).

received by email a copy of the motion to quash the subpoena that had been filed that day.

B.   **The Illinois Lawsuit**

Defendants' attorneys from Latham & Watkins are representing McLeod in responding to the subpoena. Since McLeod resides in Chicago, Illinois, counsel filed a motion to quash the subpoena on McLeod's behalf in the Northern District of Illinois. Accompanying that motion was a declaration from McLeod dated March 22, 2021 stating that: he has "no unique or firsthand knowledge of any of the events alleged in, or related to, the Amended Complaint"; he "had no involvement whatsoever in any events relevant to the claims or defenses in the dispute"; and "if I were to be deposed, I would not be able to testify concerning any unique information relevant to the dispute. My testimony would consist only of second-hand information that other individuals – mostly counsel – have told me about the underlying dispute." (Doc. 2-1, McLeod Decl., at 29-30). McLeod acknowledged speaking with Plaintiffs about the pending lawsuit on two occasions, and provided his recollection of those discussions. Notably, his summary made clear that neither he nor the Plaintiffs said anything relevant to the claims, defenses, and damages in the lawsuit.[3]

---

[3]   The declaration states in this regard:

Since joining Corin USA in January 2019, I have only met Plaintiffs twice-first at the American Association of Hip and Knee Surgeons conference in November 2019, and again in January 2020. During these brief interactions, any reference to the pending lawsuit was very limited. I mentioned that I was aware of the lawsuit and received briefings from counsel regarding the lawsuit's progress, but that I was not actively involved in or managing the litigation. I recall stating that I was hopeful that a settlement could be reached, but other than this single comment, we did not discuss any facts relating to the dispute or anything else relevant or related to the lawsuit. Rather, our discussions focused on the potential future relationship between Plaintiffs and Corin USA.

After the case was referred (Doc. 7), this Court held a telephone status on March 30, 2021. Plaintiffs' counsel did not appear even though McLeod's counsel had emailed them the pertinent documents and advised them of the court date. (Doc. 9; Doc. 10 ¶ 5; Doc. 10-2, at 5).[4] The Court set a briefing schedule on the motion to quash and instructed McLeod to submit a status report by April 6, 2021 addressing certain questions. (Doc. 9). On April 1, 2021, Plaintiffs' counsel notified McLeod's counsel by email that no one would be appearing in the Illinois case on Plaintiffs' behalf. (Doc. 10 ¶ 8; Doc. 10-2, at 2; Doc. 13 ¶ 9). McLeod then asked Plaintiffs to withdraw the subpoena but got no response. (Doc. 10-2, at 2). McLeod reported these developments to the Court in the April 6, 2021 status report. (Doc. 10 ¶ 8). The next day, this Court granted the motion to quash and ordered Plaintiffs to pay reasonable costs McLeod had incurred in drafting the motion and the Status Report, and appearing by telephone on March 30, 2021. (Doc. 11).

### C. McLeod's Motion for Sanctions

McLeod insists that in addition to costs, he is also entitled to reasonable attorneys' fees as a sanction for Plaintiffs forcing him to "unnecessarily incur the burden and expense of moving to quash a subpoena that Plaintiffs apparently had no intention of pursuing." (Doc. 13, at 1). McLeod seeks $24,522.40 in fees, representing 35.2 hours of time spent drafting the motion to quash and the status report, and appearing by telephone for the March 30, 2021 status conference. (*Id.* at 7). He also requests additional fees incurred in drafting and filing the motion for sanctions, and compiling the documentation

---

(Doc. 2-1, McLeod Decl., at 29-30).
[4]   Plaintiffs' counsel Dakota C. Low indicated in an April 1, 2021 email that messages from defense counsel between March 29 and April 1, 2021 had gone into his "junk mail." (Doc. 10-2, at 3). Regardless, another attorney from Low's office, Jack S. Dawson, received the emails and still did not respond. (*Id.*) ("Jack just called to my attention that this email was not being answered.").

attached to the motion, in an amount to be determined.[5] (*Id.*). Plaintiffs' counsel filed an appearance in the case on June 14, 2021 (Doc. 22), and now argue that sanctions are not appropriate here because McLeod is not a truly disinterested "non-party" witness as contemplated by Rule 45, he did not suffer any undue burden or expense, and the amount of fees requested is excessive. (Doc. 21).

## DISCUSSION

Rule 45 allows a party to subpoena a non-party witness to produce documents or attend a deposition. *See, e.g., Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 11 C 2450, 2013 WL 5423852, at *2 (N.D. Ill. Sept. 27, 2013). Under Rule 45(d)(1), the party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). *See also Elliot v. Mission Trust Servs., LLC*, No. 14 C 9625, 2015 WL 1567901, at *6 (N.D. Ill. Apr. 7, 2015). In addition, the court "must enforce this duty and impose an appropriate sanction – which may include . . . reasonable attorney's fees – on a party or attorney who fails to comply. *Id.*

### A. McLeod is a Non-Party Witness

Plaintiffs contend that the motion for sanctions should be denied because McLeod does not qualify as a disinterested non-party entitled to "reimburse[ment] for any expenses" under Rule 45. (Doc. 21, at 4). There is no dispute that McLeod is not a named party in the Oklahoma lawsuit, and neither is his company, Corin USA. Plaintiffs argue that McLeod nonetheless has a "relationship" with Defendant OMNI because Corin USA and OMNI share the same parent company, Corin Group. (*Id.*). According to

---

[5] McLeod further sought $339.16 in expenses, which Plaintiffs paid on April 29, 2021. (Doc. 13, at 6).

Plaintiffs, as President of Corin USA, McLeod has an interest in the outcome of the Oklahoma litigation and is not entitled to recover his attorneys' fees for that reason. (*Id.* at 4-5) (citing *Balfor Beatty Infrastructure, Inc. v. PB&A, Inc.*, 319 F.R.D. 277, 282 (N.D. Cal. 2017); *Hyundai Motor Am., Inc. v. Pinnacle Group, LLC*, No. SAVC 14-0576-CJC, 2016 WL 6208313, at *1 (C.D. Cal. Apr. 20, 2016); *Wells Fargo Bank, N.A. v. Konover*, 259 F.R.D. 206, 206 (D. Conn. 2009)).

The flaw in Plaintiffs' argument is that it is premised on Rule 45(d)(2), which contemplates that significant expenses resulting from the production of "documents or tangible things" can be shifted away from a disinterested non-party and onto the requesting party. FED. R. CIV. P. 45(d)(2)(B). *See, e.g., Balfor Beatty Infrastructure*, 319 F.R.D. at 282-83 (declining to award sanctions for costs related to production of over 45,000 pages of documents where the non-party was not "completely uninterested" in the acts giving rise to the underlying lawsuit); *Hyundai Motor Am.*, 2016 WL 6208313, at *1 (cost-shifting related to non-party's production of documents not appropriate under Rule 45(d)(2) in part because the non-party "d[id] not stand as a disinterested third party."); *Wells Fargo Bank*, 259 F.R.D. at 206 (non-party properly bore the expense of producing documents where it had "a material involvement and strong interest in one of the central transactions being challenged as a fraudulent transfer in this case."). Here, the subpoena issued to McLeod sought only his deposition testimony and not documents, so Rule 45(d)(2) does not apply. Plaintiffs' objection that McLeod cannot recover sanctions because he does not qualify as a disinterested "non-party" under that subsection is overruled.

### B. Reasonable Steps to Avoid Undue Burden

McLeod argues that sanctions are warranted because Plaintiffs violated their duty under Rule 45(d)(1) to avoid imposing undue burden or expense upon him. In determining whether a party has breached its duty under Rule 45(d)(1), courts look to the principles set forth in Rule 26(g). *See In re: Modern Plastics Corp.*, 890 F.3d 244, 251 n.5 (6th Cir. 2018) ("The advisory committee's notes for the 1991 amendment to Rule 45 indicate that this section [(d)(1)] is intended to give specific application to FED. R. CIV. P. 26(g)."); *Donald v. Outlaw*, No. 2:17-CV-32-TLS-JPK, 2020 WL 2899689, at *7 (N.D. Ind. June 2, 2020) (quoting *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 307 (S.D. Ind. 2016)) ("The limits and breadth of discovery expressed in Rule 26 are applicable to non-party discovery under Rule 45."). "The authority on when it is appropriate to impose sanctions under Rule 45(d)(1) is sparse, but the Ninth Circuit has given some guidance to lower courts on this issue." *Bd. of Trustees of Southern Nevada Joint Mgmt. and Culinary and Bartenders Training Fund v. Fava*, No. 2:18-CV-0036-JCM-DJA, 2019 WL 11093817, at *3 (D. Nev. Oct. 31, 2019) (citing *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013)). Specifically, a district court "need not impose sanctions every time it finds a subpoena overbroad," but "may . . . impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Id.* (quoting *Legal Voice*, 738 F.3d at 1185).

In his March 22, 2021 declaration, McLeod described the burden of the subpoena as follows: "Preparing and sitting for a deposition in this matter on March 23, 2021 would be an undue burden on me. As mentioned, I have no information unique to this case, and preparing for a deposition would necessarily distract from other important obligations

to Corin USA, including working to successfully navigate the company through the still ongoing and uncertain COVID-19 crisis." (Doc. 2-1, at 30). Of course, since this Court granted McLeod's motion to quash the subpoena without any formal opposition from Plaintiffs, McLeod never had to prepare, or sit, for a deposition. Even if McLeod had appeared for his deposition, the burden likely would have been minimal since it was set to take place by video and could not have lasted long given McLeod's apparent lack of pertinent information.

McLeod argues in the sanctions motion that he suffered an undue burden by having to retain counsel and respond to the subpoena in the first place. (Doc. 13, at 7-8) (citing *Renasant Bank, Inc. v. AVE, Inc.*, No. 20-MC-76-DWD, 2021 WL 254373, at *2 (S.D. Ill. Jan. 26, 2021)). In *Renasant Bank*, the defendants issued a facially defective subpoena to a non-party requiring the production of documents "at a location in excess of the 100-mile geographical limit." 2021 WL 254373, at *2. The court held that sanctions were appropriate under Rule 45(d)(1) because defense counsel "could have easily determined that the subpoena would not be in compliance with" Rule 45 by looking at a map, but "chose to simply transfer onto [the non-party] the undue burden of either complying with the subpoena or hiring an attorney to challenge it." *Id*. As a result, the non-party incurred $500 in attorneys' fees that the court required defendants to pay. The situation presented here is distinguishable. First, for reasons discussed below, issuance of the deposition subpoena did not amount to sanctionable conduct. Second, non-party McLeod is being represented by defense counsel in the underlying lawsuit who are paid

by a party (OMNI), so it was not an undue burden for him to retain counsel to challenge the subpoena for his video deposition.[6]

Turning to the first issue, McLeod claims that Plaintiffs' decision to serve the subpoena without providing "any meaningful explanation of what information they believed [McLeod] possessed" demonstrates that they "failed to take any steps, let alone reasonable ones, to ensure that Mr. McLeod need not incur the burden or expense of hiring counsel to challenge the subpoena in this Court." (*Id.* at 7; Doc. 23, at 8). The Court is not persuaded that Plaintiffs violated their duty under Rule 45(d)(1) merely by serving the subpoena. Defendant OMNI introduced McLeod into the Oklahoma lawsuit by identifying him as a person with knowledge in their August 2020 Supplemental Discovery Responses. In fact, OMNI indicated that McLeod's email address was used "to communicate with Plaintiffs" about the lawsuit. (No. 5:15-cv-305-SLP, Doc. 102-9, at 21).[7] Plaintiffs also knew that they had spoken directly with McLeod about the lawsuit, and could not know whether McLeod's memory of those discussions would diverge from their own. Given these circumstances, it was not unreasonable for Plaintiffs to seek to depose McLeod. Nor is the Court persuaded that Plaintiffs had an obligation to first reveal their own recollections of the substance of communications with McLeod about the lawsuit before seeking to learn McLeod's recollection.

McLeod disagrees, arguing that OMNI included information about him "out of an abundance of caution and in the spirit of cooperation" given the "sweeping scope" of the

---

[6] Though McLeod argued in his motion to quash that the subpoena was facially defective because it "did not designate any actual place of compliance for the deposition," (Doc. 2, at 7), he never raised that issue during the meet and confer process. (Doc. 2-1, at 32-33, 38).
[7] There is no evidence that Defendants amended their Supplemental Discovery Responses to remove McLeod or his email address.

discovery requests. (Doc. 23, at 11). That may be, but OMNI answered notwithstanding any concerns about overbreadth, and since McLeod is being represented by OMNI's counsel, the fact that OMNI supplied the discovery responses is not evidence that Plaintiffs acted unreasonably in pursuing McLeod's deposition. Moreover, McLeod's declaration confirms that he spoke directly with the Plaintiffs about the lawsuit. Prior to receiving the declaration, Plaintiffs had no way of knowing for certain whether McLeod would claim that Plaintiffs (or he) had made any admissions or other statements of significance to the lawsuit.

McLeod also makes much of the fact that Plaintiffs ignored defense counsel's consistent representations that he had no unique or firsthand knowledge of the Oklahoma case, and accuses Plaintiffs of "refus[ing] to meaningful[ly] engage with these repeated explanations." (Doc. 13, at 7). Plaintiffs say they asked for a declaration confirming McLeod's lack of knowledge and never received one. (Doc. 21-2, Low Decl., ¶ 4) (Low "told Defense Counsel that I needed an affidavit/declaration from Mr. McLeod that contradicted the discovery responses which were under oath that Mr. McLeod had no such information [relevant to the case]."). McLeod's attorney denies that Plaintiffs' counsel ever made such a request. (Doc. 24, Gardner Decl., ¶ 5) ("At no point in our discussions did Plaintiffs' counsel ever request – either verbally or in writing – a declaration from Mr. McLeod."). (*See also* Doc. 23, at 3) ("It never happened.").

This Court need not resolve whether Plaintiffs asked McLeod for a declaration because even assuming they did not, they still were not required to accept counsel's word regarding McLeod's purported knowledge of the Oklahoma case. The simple and obvious solution would have been for McLeod to provide a declaration during the meet and confer

process (even in the absence of a request for one) to counter OMNI's sworn discovery responses stating that he did possess relevant information and given his direct discussions with Plaintiffs about the lawsuit on two occasions. Since, as noted, McLeod is represented by OMNI's counsel, this would have been easy to accomplish. Instead, McLeod decided to wait and attach the declaration to his March 2021 motion to quash. Had McLeod supplied the declaration sooner, then he would be in a better position to argue that by serving the subpoena after receiving his sworn statement regarding lack of knowledge (rather than mere assertions of this from OMNI's counsel), Plaintiffs failed to take reasonable steps to prevent undue burden. Notably, McLeod does not argue that it was burdensome for him to sign the two-page declaration attached to the motion to quash, or articulate any reason he could not have prepared it earlier. As it stands, the Court is not persuaded under the circumstances here that Plaintiffs engaged in sanctionable conduct merely by serving the subpoena. *Alberts v. HCA Inc.*, 405 B.R. 498, 502–03 (D.D.C. 2009) ("[T]he mere fact . . . that a disputed subpoena is ultimately deemed unwarranted does not, standing alone, demand the imposition of sanctions."); *Scherer v. GE Capital Corp.*, 185 F.R.D. 351, 352 (D. Kan. 1999) (finding that sanctions were not appropriate simply for the expense of filing the motion to quash).

Though Plaintiffs did not subject McLeod to undue burden by serving the subpoena, their actions after McLeod moved to quash arguably created unnecessary work for his attorneys in violation of Rule 45(d)(1). Upon receiving the motion and McLeod's declaration, Plaintiffs did not withdraw the subpoena. Nor did they respond to multiple email communications inquiring about their position or appear for a hearing before this Court on March 30, 2021. While Plaintiffs' counsel ultimately informed

McLeod's attorneys that Plaintiffs would not be appearing in the case, the attorneys had already spent time and expense attending the March 30 hearing, and then invested additional time drafting a 6-page status report that in part notified the Court of Plaintiffs' decision. (Doc. 10). That said, it is difficult to characterize this financial burden as "undue." The March 30 hearing was telephonic and lasted only 7 minutes, and it appears that counsel spent at most 3.7 hours between April 1 and 6, 2021 preparing the status report. (Doc. 15-1). As discussed below, moreover, the financial burden fell entirely on a party in the litigation (OMNI) rather than on the non-party, as sometimes happens when a non-party is aligned with a party (as here), or when a party has some other motivation for hiring (and paying) counsel for a non-party. In declining to impose sanctions, the Court is also mindful that Plaintiffs opted not to oppose the motion to quash or file a motion to compel compliance. *See Builders Ass'n of Greater Chicago v. City of Chicago*, No. 96 C 1122, 2002 WL 1008455, at *5 (N.D. Ill. May 13, 2002) (in finding breach of duty to take reasonable steps to avoid imposing undue burden on non-party, the court noted that the issuing party "not only responded to the motions to quash and the objections, but also filed its motion to compel compliance with the subpoenas.").

    **C.**     **Appropriate Sanction**

Even where a non-party suffers an undue burden or expense because the party or attorney issuing the subpoena failed to take reasonable steps to avoid this, the question arises of what "appropriate sanction" to impose. Rule 45(d)(1) provides that courts must "impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply." FED. R. CIV. P. 45(d)(1). In his motion for sanctions, McLeod argues that he "unnecessarily incur[red] the burden and

expense" of responding to the subpoena and so is entitled to recover "his reasonable attorneys' fees" as a sanction. (Doc. 13, at 1; Doc. 23, at 8). It is clear from the Latham & Watkins invoice and billing records attached to the motion, however, that the bill for the work performed on McLeod's motion to quash went to (and by now presumably has been paid by) Defendant OMNI and not McLeod. (Doc. 15-2).[8] McLeod has not presented any evidence suggesting that he personally paid for his legal representation. So in effect, the sanction he seeks is an order requiring Plaintiffs to pay to Defendant OMNI the amount OMNI agreed to pay its own lawyers to file the motion to quash and motion for sanctions on McLeod's behalf and otherwise represent him. McLeod has not identified any case suggesting that Rule 45(d)(1) contemplates this type of sanction (payment of fees incurred by a party) where the non-party did not incur the undue burden of those fees. Absent evidence that McLeod suffered any undue burden in this case, the Court declines to find that a sanction should be imposed under Rule 45(d)(1), and that an appropriate sanction would be payment of attorneys' fees incurred by OMNI.[9]

## CONCLUSION

For the reasons set forth above, Non-Party Andrew McLeod's Motion for Sanctions [13] is denied.

---

[8] The work performed on behalf of McLeod is included as part of a larger bill to OMNI containing numerous redacted entries apparently related to work on the underlying litigation in Oklahoma. (Doc. 15-2).

[9] Having concluded that McLeod is not entitled to an award of sanctions, the Court need not address the parties' arguments regarding the reasonableness of Latham & Watkins' billing practices, hours, and rates. Nor is there a need for McLeod to submit additional billing records from Latham & Watkins reflecting the additional fees he seeks to recover (on behalf of OMNI) for time spent litigating the motion for sanctions.

ENTER:

Dated: October 11, 2022

_____
SHEILA FINNEGAN
United States Magistrate Judge